16-5599 U.S.A. v. Gerald Jackson Oral argument not to exceed 15 minutes per side Mr. Stanford for the appellate Mr. Stanford for the appellate Mr. Stanford for the appellate The home invasion that Detective Earley investigated on July 17th and July 18th essentially involved a series of events where three black males entered into a residence, bound the victim, pistol whipped him, stole various items of property from his residence, and then used him as a human shield to enter the neighbor's residence. During the course of the three-hour home invasion, they sought drugs and money from the residence of the victim. After an alarm sound at the neighbor's residence, the three males fled the scene, and that was the information that Detective Earley gleaned from his interview of the victim and the neighbor at the scene of the home invasion. He learned those facts. When did he learn about the missing bumper on the suspicious car? I'm sorry, Your Honor, can you restate the question? Didn't he learn something about kind of a dark car with a missing front bumper? He did, Your Honor. The next day, he returned... I'm sorry. When did that come up? That came up the next day after he spoke with... This was approximately 4 a.m., it's my belief, on the 17th of July. On the 18th of July, he returned to do a neighborhood canvas, and he spoke with a female who was not named at a residence on Birchwood Drive. That female indicated that she returned home during the evening hours of the 17th and noticed on the street, on the public street in front of her residence, that a silver or gray car missing its front bumper was parked there. She took note of the vehicle because she said she had never seen it before, but she had no information about the home invasion. She did not see the suspects of the home invasion flee to that car. None of the individuals inside the residence saw the suspects flee to that car. So, essentially, I've got two arguments with regard to the informant's tip. Number one, I don't believe that the informant's tip was reliable because she refused to give a name, and when we were at... Didn't he know who she was? Well, Your Honor, it's unclear from the record whether or not he had ever had any prior interactions with her, but there is no proof to the effect that he had any prior interactions with this informant. But he knew where she lived. I think those words are used. He certainly knew where she was, and he said, I could go back and find her. Did he not? Something like that? He said that he knew where she was located on that morning. I think he was unclear as to whether or not that was her residence or the friend's residence, but in any event, he did know where he spoke face-to-face with her. So this is not an anonymous tip in the sense of you pick up the phone and it says, Bill did it? It's kind of a quasi-anonymous tip, I would submit. Actually, there's an opinion of mine you could find where I distinguish between an anonymous informant and an informant whose name is not stated. Correct. And there's also the long opinion, which was cited by the government, which stands for the proposition that merely being a nameless informant is not necessarily enough to deem a tip unreliable. However, what I have an issue with, and this is not the crux of my argument, so I'd like to move on from this in a moment, but what I take issue with is that when we're at the district court level and I'm trying to confront and cross-examine the witnesses against my client, I am prohibited by the magistrate judge from even knowing the address where the anonymous informant was located on that particular date. Of course, we don't know the name. I have virtually no opportunity to investigate and then confront and cross-examine that witness against my client. Are you saying that that was a violation of law there? Your Honor, I think that— The officer has to reveal the name of the witness to the defendant? No, Your Honor, but I don't think the government can have it both ways. Your Honor, what I think has happened here is this witness is anonymous in order to protect her safety, and she's anonymous, and I'm withheld from that information, and that's fine. If she's anonymous, she's anonymous. Then the standard applies to anonymous tipsters rather than known informants. But the government gets to have it both ways here. I don't have the opportunity to confront and cross-examine and investigate that tip. If they tried to rely on it at trial, then they tried to have her— the officer couldn't testify to some of these things at trial probably without producing her, could she? That's a little different. I think it's important for purposes of a motion to suppress also because that is the threshold determination of whether or not my client's constitutional rights were violated. Do you have any law in effect if you're making a confrontation clause argument that that would apply in this kind of situation on a motion to suppress? I don't, Your Honor, but I would like to just point out that it is seemingly fundamentally unfair to the defendant in this type of prosecution to be told on one hand this is an anonymous tipster, we're not going to give you information, we're not going to allow you to confront this tipster, to investigate this. But on the other hand, when we make a ruling on whether or not this was a reliable tip, this is a known informant all of a sudden. So the government gets to have it both ways, and the defense is left without any recourse in determining that. I'd like to move on from this because I believe the strength of my argument comes from the fact that when the tip is given by the informant, the informant says there is a silver or gray car missing its front bumper parked on the street in front of my house. There's no connection between that car and the home invasion. Cars are parked on public streets all the time. I park my car on public streets from time to time when I'm visiting friends. Does that mean that if a crime occurs while I'm visiting a friend and my car is parked on a public street, I'm subject to be pulled over 19 days earlier? I don't think it should be, Your Honor. Can't they go over, can't they just talk to somebody and when they see a peculiar car that looks like this, that wasn't supposed to be in the neighborhood, they can just hop and say, do you know anything about somebody in a car like this on such and such a day? I think the difference is that a casual encounter with police, say that, for instance, they had had some information tying my client to the home invasion and they encountered that, my client, on the street. A casual encounter with police would be permissible under those circumstances, but that's not the standard we're dealing with here. The standard we're dealing with here is reasonable suspicion based on specific and articulable facts. And when you look at what the officer could articulate, he could articulate that a gray and silver car was parked on a public street after midnight at the edge of the property line of the robbed property. Are those both correct? It is in the record, Your Honor, that the detective early stated that the car was parked in front of the tipster's residence. And then later, when I further questioned him on cross-examination, you're correct, he changes his story a little bit and says the car was parked at the edge of the property line. Of course, I'm not allowed to know. Well, that implies that you probably could find her because it sounds like she's the next-door neighbor on one side or the other. You have to understand I'm prohibited by the magistrate judge of even knowing the location of any of these houses for purposes of protecting the safety of— You don't know the house that was robbed? I do not, Your Honor. And I asked specifically during my motion to suppress, I just know that it was a house, a duplex on Birchwood Drive in Chattanooga. That is all I'm allowed to know, apparently, for the safety of this witness. Do we know the name of the victim? On the home invasion? We do not, Your Honor. Never filed a police report? Didn't appear in the newspapers? There was a police report, Your Honor. I don't know if it made it in the record. It may have. Go ahead. I'm unclear on that. I apologize. Go ahead. In any event, I'm left with this feeling that Detective Early, you know, essentially gets a tip that there's a car parked on a public street. As you pointed out, after midnight— Never been seen before. Never been seen before. Apparently, not other cars parked around there. That's correct. Seemed to be a late night party. That's correct, but, you know, I've looked at this area of Chattanooga and there are multiple duplexes in line on the street, and I'm not trying to testify here and interject facts, but there are multiple driveways along the street where other cars were presumably parked. They just target this— Is that really your argument? I believe that this only rises to the level of an inchoate and unparticularized hunch. As Terry says, it's not okay. It's not enough to rise to the level of reasonableness. Maybe in a minute we're going to get into the bumper, but so this would be exactly the same if she had the whole license plate? No, Your Honor, I don't think that the description of the car was not particularized. I have a problem with the lack of nexus between the car and the criminal activity. Even if she had the whole license plate, you would still say same thing, no reason? Absolutely. Make, model, you know, every bit of information about that car, more information about that car. That's not my argument. If you've got that, then we don't need to talk about the front bumper. You're just saying you've got a car on the street late at night next to the robbery house, but that's not good enough. Well, Your Honor, I don't think it was next to the robbery house. It's clear from the transcript that the tipster said it was in front of her residence, and the tipster's house was not the victim. She was not the victim. I understand that, but correct me if I'm wrong, because you just said, okay, not that he changed his story, but he now said that it was on the edge of the robbed duplex property line. Is that right? He did say that. But I'm unclear as to where this neighbor's house is. There's only a couple of property lines, counsel. I mean, let's not play with that. And I'm not trying to get too far off base, but I really do think that if a tipster, in all of the cases that I've reviewed. What I mean is that I take your argument that it's conceivable that the car was there for innocent purposes. It's conceivable. His girlfriend lives across the street. He was going to watch the Packers game late at night or play World of Warcraft. I don't know. But then the question is how plausible is that versus the alternative inferences? Okay. I understand that. I say that my time is up. Okay. Thank you, counsel. Good morning. May it please the court. I'm Bill Roach, and I represent the United States. Defendant's suppression motion was rightly denied because the vehicle that was stopped matched the description of the vehicle that had been seen at the specific time and location of the home invasion and was occupied by three individuals who matched the description of the perpetrators from the home invasion. They matched them other than being black males? That was all the description that Investigator Early had, Your Honor. When he arrived at the site of the home invasion that evening, he learned that there were three black males. That was all he learned from the victim of the home invasion. He learned that from the victim. Well, it's either the victim, Your Honor, or one of the two victims. So it was either the victim who was bound and tied up or it was the next-door neighbor whose house was broken into second. And then when he came back the next day, of course, he learned the specific description of the vehicle. And I wanted to point out one thing in the record. Investigator Early testified that the neighbor had told him that the vehicle in question, the bumperless silver vehicle, four-door, beat up all over, that it was parked, quote, right next to the residence on the street. The residence meaning? The residence. It appears from the transcript that he is saying the residence as in the residence of the home invasion. So we don't know the proximity, how close the neighbor lived to the victim, but I think it's reasonable to assume from the record that it was fairly close given the description here. Your adversary said that the officer had first testified or reported that the car was in front of the house. I think the car was on the street. It was parked on the street in front of so the victim of the home invasion lived in a duplex, and then the neighbor lived either down the street or next door to the duplex, but the car was parked on the street and not in the parking lot for. I understand that, but I thought he had said that the officer's first statement had been that the silver car was in front of the robbed home, and then later, well, it was close. It was near the property line. Did I mishear him? I do think that he said there was a discrepancy. My reading of the record, I don't see that discrepancy. I think it's clear that the car is parked outside of the residence on the street, and I think that's important here because it shows that it does show a nexus between the home invasion and the vehicle. So the neighbor told investigator early that not only was the car parked on the street out in front of the residence, but she gave a very specific and particular description of the vehicle. She said it was a four-door, silver or gray, that it was beat up all over, and that it was missing the whole front bumper, and she also said that it was noticeable to her because she had never seen it there before. In addition, she saw it at precisely the time that the home invasion happened, sometime right around midnight, and so the fact that the vehicle had not been there before gave investigator early reasonable suspicion to stop the vehicle briefly and investigate to either confirm or dispel his suspicion. And I would also point out that investigator early didn't initiate the stop of the vehicle until he was able to connect both the description of the vehicle and also the vehicle's occupants, which matched the description of the perpetrators from the home invasion. And so given those facts and the standard for reasonable suspicion that it has to be specific and articulable, our argument here is that these facts about the vehicle are very particular, very specific facts about the vehicle in addition to the vehicle being occupied by individuals who met the description from the home invasion.  That's true, Your Honor. Investigator early made that connection after he had already initiated the traffic stop based on the description from the home invasion. So when he was walking up to the vehicle to approach the vehicle, he did notice that the hubcaps, that the car was missing hubcaps and that the wheels were black. It's clear from the record, though, that he didn't actually see the wheels before he made the stop. So we're relying on the missing front bumper and the fact that the occupants of the vehicle met the description. Right. The jewelry, the information, you might say, that he could confirm that connected to the jewelry robbery at the time of the stop would only have been the silver color. The jewelry store didn't say it was missing the front bumper. That's correct. It looks like from the record that the video camera from the jewelry store robbery showed the side of the vehicle. And so on Amicola Highway, Investigator Early was coming head on. So he noticed the bumper. And I would say that, you know, his testimony in the record is he says, you know, he almost snapped his neck or broke his neck when he looked at it because it was such a distinct factor. I think, you know, if you look at some of the cases, especially from this circuit, you know, United States versus long United States versus Hearst. When you have a description of a vehicle that's specific like that, you know, that that generally meets the standard for for reasonable suspicion. I would also point out that the defense counsel, the second argument about there being no connection between the car, I think. And, you know, Judge Collier recognized this in the in his order. Just the fact that the car was parked on the street at the specific time and that the neighbor had never seen it there before. In his view, that was enough to to show reasonable suspicion. And, you know, our argument here is that not only do we have the specific and distinct characteristics of the car and the and being in the location at the time of the home invasion, but we also have, you know, investigator early making that connection between the description of the perpetrators who were occupying the vehicle. And so while the vehicle initially gave him suspicion to to turn around and follow it, he didn't actually initiate the stop until he was able to to connect the car, the bumperless car with with the home invasion. And responding briefly to defense counsel's first point about the reliability of the of the informant, Judge Boggs, I think you might have been referring to the Hennis versus Bagley case, the known versus unknown informant. And I think here, you know, given the fact that investigator early had the chance to to speak to this neighbor face to face and assess her credibility. I think under this court's precedent, it's you know, she is a known informant. And so therefore, her her testimony is is more reliable. And I would also point to a seminal Supreme Court case, Illinois versus Gates, that says, you know, known informants are given their their information is given more credence, more credibility when an informant is known. So I think here I don't think the absence of her name is is important. It was the content of her information. It was the uniqueness of the situation where she where she saw the car and when she saw the car. And given the totality of the circumstances here, I think that investigator early had specific and articulable facts to support his reasonable suspicion. Anything else, judges? Thank you. Thank you. I want to start by briefly clearing up the discrepancy between early two statements. Detective early two statements on page 10 of the motion to suppress transcript lines 22 and 23. He begins to explain that what the the female informant notified him of regarding the vehicle and said that a gray vehicle was parked out in front of her residence. Page 40 of the transcript goes on. And that's my cross examination of detective early. And I said, how far away from the residence that this allegedly occurred was the car parked would be your estimate. And he responded and said it was right. If you had the property line, it was parked right there at the edge of the property line. So I have no idea whether or not those two statements contradict each other, because I have no idea where this informant resided, because the judge wouldn't allow me to inquire into that. But they they easily could stand together if if her if her property adjoins the robbed house. They could. But that's not in the record. Your Honor. So I just wanted to point out that the car was initially parked in front of her house. And then potentially there's a let's say it's an ambiguity. It's not necessarily a contradiction. Absolutely. My issue with the informants information is not with the specificity of the vehicle. I want to make that clear. That is not the issue here. Both the content of the informants information and the reliability are what is important in this court's determining as to whether or not that was a reliable source. When you look at the cases cited by the government and the cases in the circuit, the Supreme Court cases that look at whether or not reasonable suspicion exists for a stop in closer cases, you've got long and long. There's a pickup truck that a neighbor sees being loaded by individuals who he knows to be drug dealers who are collecting a drug debt from his neighbor because she has a drug issue. He predicts that that vehicle is going to be traveling toward Cherry Street in Knoxville and toward the interstate. He predicts the direction of travel within minutes. Officers see that car being driven by a black male. They pull the car over and that was deemed reasonable suspicion. Here, 19 days had elapsed. It is almost inconceivable that this court or any court could imagine that the three armed individuals and the home invasion are still running around together 19 days later with some connection to that home invasion. It is a huge amount of time that had elapsed. In any event, when he pulls the car over, he doesn't find one single shred of evidence that corroborates that these individuals were the ones involved in the home invasion. There were a TV, a game system, a .22 rifle, and a 9mm taken from that residence. None of those items were recovered in the vehicle. And that's because 19 days had elapsed. This was a stale tip completely devoid of any nexus between the home invasion and the car being parked on the street. Thank you, counsel. I think your time has expired. Thank you. We do appreciate your taking this case under the Criminal Justice Act. It's a service to our system of justice as well as to your defense. Thank you for having me. The case will be submitted and the clerk may call the next case.